JAMES MAYNARD ET AL. v. A. S. SEARS.

(Filed 15 November, 1911.)

1. **Wills—Devises—Defeasible Fee—Deeds and Conveyances—Purchase.**

    A testator bequeathed certain personalty to several named beneficiaries, as to each specifying, "to him and his lawful heirs begotten of his body, dying without such, to return" to certain designated persons "or their lawful heirs"; and also devised and bequeathed "the balance of my land and negroes to be equally divided between" J., C., and T., with provision that if "they all should die without such heirs, to return to my brother and sister": *Held,* J., C., and T. took a defeasible fee in the land, determinable at their death without lawful issue, and could convey no greater interest therein.

2. **Wills—Devises—Defeasible Fee—Life Estate—Limitations of Actions.**

    A devise of lands terminable upon the death of the devisee "without lawful issue" is a life estate upon the happening of the contingent defeasible event, and the statute of limitations does not begin to run against the remainderman in fee until the life estate falls in.

3. **Wills—Devises—Defeasible Fee—Devisor's Title—Identification —Evidence.**

    In an action brought by the heir at law of the remainderman to recover lands devised to his ancestor, evidence is sufficient as tending to show that the title to the lands in dispute was in the devisor, when the will itself shows he claimed the fee, and

157—1

MAYNARD *v.* SEARS.

the testimony of a witness was that when he first knew the lands he was about five or six years old and the devisor cultivated them, and that the description of the lands in the will embraced the *locus in quo*, which he identified and described, and that upon the death of the· devisor the devisee took possession of and cultivated the land, and stated that his title was "only good for life," with other evidence·that there was a defect of the fee-simple title in him.

4. **Evidence—Lands—Acts of Ownership—Age of Witness—Weight of Evidence—Questions for Jury.**

   When a witness, testifying as to acts of ownership of one having claimed the title to lands in dispute, says that at the time he was five or six years old, the weight of his testimony is for the jury to determine.

5. **Nonsuit—Evidence—Questions for Jury.**

   In this case there was sufficient evidence to be submitted to the jury upon the question as to whether the plaintiffs were the heirs at law of J. S., under whom they claimed certain lands, the title to which was in dispute, and therefore a motion to nonsuit upon· the evidence on that ground was improperly sustained.

APPEAL by plaintiff from *Whedbee, J.,* at February Term, 1911, of WAKE.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*Aycock & Winston and Peele & Maynard for plaintiff.*
*R. N. Simms for defendant.*

CLARK, C. J.   This is an action to recover 100 acres of land. Berry Surls died in 1842, having executed his will as follows:

In the name of God, amen.  I, Berry Surls, of county of Wake, being of sound and perfect mind and memory, blessed be God, do this 10th day of February, 1842, make and publish this my last will and testament in manner following: That is to say, First, I give and bequeath to John Pollard one negro girl by the name of Jane, to him and his lawful heirs begotten of his body; dying without such, to return to Caswell Pollard and Thomas Slaughter, or their lawful heirs begotten of their body. Item the second.: I give Caswell Pollard one negro girl by the

name of Hannah, to him and his lawful heirs begotten of his body; dying without such, to return as above directed.    Thirdly, I give to Thomas Slaughter one negro girl by the name of Pat, to him and his lawful heirs begotten of his body; dying without such, to return to John and Caswell Pollard, or their lawful heirs begotten of their body; and the balance of my land and negroes to be equally divided between John Pollard, Caswell Pollard, and Thomas Slaughter, after paying all my just debts, with the exception of Buck.    It is my desire that he be sold to a speculator; and it is my desire that all my stock of all kinds be sold and equally divided between them as above stated. Also, my money and notes to be divided in the manner above stated equally between my three sons which are named in this will.    It is my desire that if they all should die without such heirs, to return to my brother and sister, or their lawful heirs. I also appoint and ordain my worthy friend, Henry Williams, my executor to this my last will and testament.    In testimony whereof I have hereunto set my hand and affixed my seal, in the presence of Dempsey Sorrell and John Brown, this 10th day of February, 1842.

His<br>BERRY &times; SURLS.<br>mark.

The plaintiffs claim that they are the heirs at law of John Surls, who was a brother of Berry Surls, and offered evidence thereof.    Berry Surls left no legitimate children.    Soon after he died his three devisees, John and Caswell Pollard and Thomas Slaughter, took possession of the land sued for and cultivated the same, which they undertook to convey on 4 October, 1851, to Bartlett Sears, who took possession of the land and held it till his death.    It was sold 10 February, 1873, to pay the debts of Bartlett Sears.    It was purchased by W. H. Crabtree, who took possession. The deed to him recites that the land is the same as that sold by John Pollard, Caswell Pollard, and Thomas Slaughter to Bartlett Sears by aforesaid deed 4 October, 1851.    On 20 November, 1878, Crabtree sold the land, together with adjoining land, making a tract of 282 acres, to S. R. Horne, who remained in possession till 24 April, 1897, when he

conveyed the land to the defendant Sears. The last one of the three devisees named in the will of Berry Surls, to wit, Caswell Pollard, died in February, 1908. This action was brought the following year.

The plaintiffs correctly contend that under the will of Berry Surls, John and Caswell Pollard and Thomas Slaughter took a defeasible fee in said 100 acres, and that their deed to Bartlett Sears conveyed only such estate, and that the successive mesne conveyances down to the defendant Sears conveyed no more than such defeasible fee in the land. The statute of limitations did not begin to run against the plaintiffs, if heirs at law of John Surls, till the death of Caswell Pollard in 1908. Only one of the three devisees married, and the plaintiffs offered evidence that he left no children.

The statute of limitations does not run against the remainderman in favor of the grantee of the life tenant until the life estate falls in. *Hauser v. Craft,* 134 N. C., 319; *Cox v. Jernigan,* 154 N. C., 584; *Staton v. Mullis,* 92 N. C., 519.

The defendant contends that the evidence does not show that the land ever belonged to Berry Surls, nor that the plaintiffs are the heirs at law of John Surls, nor that Thomas Slaughter and John Pollard are yet dead, and that they did not leave children.

There was evidence upon all these propositions, but the defendant claimed that it was not sufficient to be submitted to the jury to prove these contentions of the plaintiffs. The judge having directed a nonsuit, the evidence must be taken in the light of the most favorable inferences which can be drawn from it.

It is manifest from the entire will that the testator intended that each of the devisees should have a fee simple, defeasible upon failure of heirs of his body. He makes this direction as to the slaves, his money and notes, and directs "the balance of the land and negroes be equally divided between the three," adding that it was his desire "that if they all should die without such heirs, to return to my brother and sister or their lawful heirs." The testator applied the significant word "return" to everything.

The witness Markham testified that when he first knew the land, Berry Surls was cultivating it; that the witness was then five or six years old; that he saw the negro Buck named in the deed at work on the land, and that the description of the 100 acres in the will from the three devisees to Sears embraced the 100 acres of land which he identified and described. He says that 50 acres were in cultivation when he first knew the land; that he remembers that a man was found dead on the tract, and that Berry Surls had a grave dug on the land to bury him; that after the death of Berry Surls the three devisees took possession of the land and cultivated it. That Berry Surls lived on the land; that he saw him in the house he lived in, saw him two or three times, and saw him walking in the fields where Buck and Beck mentioned in his will were working. It is true that the witness states that he was then only five or six years of age. But the weight of his testimony was a matter for the jury. A son of Bartlett G. Sears, former owner of the land, fully identified the 100 acres. The witness Markham testified that Bartlett Sears while in possession cut down the timber on the land and stated that his title was only good for the lifetime of the three devisees named in the will. The witness Sears also stated that he was present when the land was sold to pay his father's debts, and it was stated at the time that the title was in dispute and the land brought only $160 or $170, whereas it was really worth $500 or $600. The witness Byrd testified that he heard Horne, the defendant's grantor, say that he told the defendant that there was a defect in the title of the 100-acre tract. The will of Berry Surls shows that he claimed to own this land in fee simple.

There is also evidence sufficient, if believed by the jury, to justify the finding that the plaintiffs were heirs at law of John Surls, and that neither John or Caswell Pollard nor Thomas Slaughter left any children. Whether the jury would have found the facts on these points in accord with the contentions of the plaintiff or not, there was sufficient evidence to submit the case to their finding. In directing a nonsuit there was.

Error.