G. H. PITTMAN v. TOBACCO GROWERS CO-OPERATIVE ASSOCIATION.

(Filed 5 March, 1924.)

**1. Contracts—Fraud—Co-operative Associations—Collateral Attack—Quo Warranto—Corporations.**

A member of a coöperative tobacco growers association, formed and incorporated under a valid statute, cannot attack the validity of the organization for lack of a sufficient number of signers, it being for the State upon a *quo warranto* to vitiate the incorporation.

**2. Contracts— Co-operative Associations—Fraud—Evidence—Questions for Jury.**

Evidence that a member of a coöperative tobacco growers association had been afforded ample opportunity to read and understand the membership contract before signing it, and. who could have done so, is sufficient to take the case to the jury upon his defense that he had been induced by the fraudulent misrepresentations of the association as to its contents.

**3. Same—Instructions.**

The fraudulent misrepresentations upon which a party seeks to set aside his written contracts must, among other things, have been reasonably relied on, and an instruction to this effect upon the evidence in this case *is held* to be without error.

**4. Same—Promissory Representations.**

Promissory representations looking to future profits or advantages cannot be considered upon the issue as to whether a party signing a contract with full opportunity to know its contents, was induced thereto by the fraudulent misrepresentations of the other party to the contract.

**5. Corporations—Co-operative Association—Contracts—Mismanagement.**

A member of a tobacco growers association cannot avoid his membership contract upon the ground of mismanagement of the corporation after its organization.

APPEAL by plaintiff from *Horton, J.,* at August Term, 1923, of PITT. The plaintiff was a merchant and was vice-president of a large mercantile corporation doing an annual business of $100,000. He was besides a farmer, cultivating 100 acres of his own land and with a number of tenants. It was in evidence that on the organization of the defendant association he became much interested, obtained a number of contracts and kept them in his store; distributed them to his customers and others, and advocated the desirability of joining the association. At a meeting in April, 1921, at his store, for the organization of the defendant company and obtaining members, he was present and handed out blank contracts asking others to read and sign, and the next day signed the contract himself. He assisted the representative of the Department of Agriculture in obtaining signatures.

In September, 1922, seventeen months after he signed the contract, he alleged that he had been defrauded. He does not allege in his complaint that there were any false promises made to him without intention to perform them, but merely that the contents of the contract had been misrepresented and that he had not read the contract.

The court submitted as issues arising on the pleadings:

1. "Had the defendant association on 1 January, 1922, failed to secure signatures of tobacco farmers or persons eligible for membership covering at least one-half of the aggregate production of tobacco in North Carolina, Virginia, and South Carolina in 1920, as alleged in the complaint?" to which the jury responded "Yes."

2. "Was the signature of the plaintiff to the contract in controversy herein produced by the false and fraudulent representations of defendant, as alleged in the complaint?" to which the jury answered "No."

3. "Is the contract in controversy void for lack of mutuality on account of the difference in contract with F. A. Elks, as alleged in the complaint?" to which the court answered "No."

The court set aside the verdict on the first issue as a matter of law, and upon the second and third issues entered judgment that the plaintiff recover nothing. The plaintiff appealed.

*Albion Dunn* for plaintiff.
*Burgess & Joyner, Jas. H. Pou, Stephen C. Bragaw,* and *Julius Brown* for defendant.
*Aaron Sapiro, E. L. Hayes, T. E. Bowen,* and *L. L. Levy* of counsel for defendant.

CLARK, C. J. There was no error in setting aside the response to the first issue. The defendant association was duly organized by virtue of a statute, the legality of which has been affirmed by this Court in *Co-operative Assn. v. Jones,* 185 N. C., 265, and has been recognized in other cases. Its validity cannot be assailed in the manner thus attempted by alleging an insufficient number of signers. This is a collateral attack and is not a direct attack by the State upon a *quo warranto* to vitiate the incorporation. Besides, there was no evidence of an insufficient sign-up, and if the plaintiff could have brought this collateral attack to vitiate the organization, the burden was upon him to produce evidence to that effect. The court properly set aside the verdict upon that issue.

Upon the second issue the jury have found that there was no fraud, and there was ample evidence to justify their verdict. The plaintiff, upon the uncontradicted evidence, was an early and earnest advocate of the association. He kept copies of the contract in his store, dis-

tributed them to his customers, and advocated and signed it. He had full opportunity to read the same.

It is needless to cite the many cases that would estop him as to the allegations that he did not know the contents of the contract. It is sufficient to cite *Griffin v. Lumber Co.*, 140 N. C., 514, and cases there cited, which hold: "Before signing a deed the grantor should read it, or if unable to do so, should require it to be read to him, and failure to do so, in the absence of any fraud or false misrepresentation as to its contents, is negligence, for the result of which the law affords no redress. But when fraud or any device is resorted to by the grantee which prevents the reading, or having it read, the rule is different." In this case the plaintiff was an intelligent man, an advocate of signing the contract in question, handed out the contracts to his customers and others asking them to read and sign it.

Upon examination of the instructions of the court upon the allegation of fraud we find no error. The court charged the jury that the plaintiff's reliance must have been reasonable, and there was no error in refusing to give the prayer requested.

In *Clements v. Ins. Co.*, 155 N. C., 57, the matter is fully discussed and there is no necessity of going over the well-settled law in a case where the plaintiff had the fullest opportunity to read the paper before signing and where there is no evidence that there was fraud or device to prevent him from reading the same.

There was no error in failing to give the specific instructions asked as to promissory or opinion representations. The charge was properly directed to the law applicable to the evidence relevant to the issues raised by the pleadings, and the instructions of the judge were sufficient under the ruling laid down in the recent case of *Williams v. Hedgepeth*, 184 N. C., 116; *Cash Register Co. v. Townsend*, 137 N. C., 655.

In *Pritchard v. Dailey*, 168 N. C., 332, the Court said: "The representations of the defendant seem to be what are called promissory representations, looking to the future as to what can be done to the property, how profitable it was, and how much could be made by the investment. Representations which merely amount to a statement of opinion go for nothing. One who relies on such affirmation made by a person whose interest might prompt him to invest the property with exaggerated value does so at his peril, and must take the consequences of his own imprudence. *Cash Register Co. v. Townsend*, 137 N. C., 652; Kerr on Frauds and Mistakes, 83."

A stronger case still is *Wilson v. Ins. Co.*, 155 N. C., 173, and *Hollingsworth v. Supreme Council*, 175 N. C., 615, and, in fact, all our authorities are uniform upon this point. The authorities are conclu-

sive that the judge committed no error in trying the issue of fraud and, besides, that the plaintiff failed to show that any fraud had been committed.

As to the first issue, as already said, there was no evidence to sustain the allegation that there was an insufficient sign-up; and, moreover, the certificate of the organization committee was conclusive upon the parties.

The assignments of error upon the allegation of mismanagement cannot be sustained. A member of a defendant corporation cannot take advantage of alleged mismanagement as a defense to his contract; and, besides, there was no evidence sustaining the allegation of mismanagement.

After a full and careful consideration of the entire case, we find

No error.