EARL GROOME v. J. V. DAVIS.

(Filed 3 May, 1939.)

1. **Automobiles § 18a—Speed involves more than mere chance of being at a particular spot at a given instant.**

   Excessive speed is not negated as a proximate cause by the fact that the speeding automobile is traveling on the proper side of the highway and that if the speed had been greater or less the accident would not have occurred, since the rationale of the statutes is that speed should not exceed that which will give the driver control of the car under circumstances likely to arise.

2. **Automobiles § 12e—Right of driver to assume that motorist approaching intersection from servient highway will observe stop signal is not absolute.**

   The driver of an automobile upon a through highway does not have the right to assume absolutely that a driver approaching the intersection along a servient highway will obey the stop sign before entering or crossing the through highway, ch. 148, Public Laws 1927, sec. 21; Michie's Code, 2621 (63), but is required to keep a proper lookout and to keep his car at a reasonable speed under the circumstances in order to avoid injury to life or limb, Michie's Code, 2621 (46) (c), and the driver of the car along the through highway forfeits his right to rely upon the assumption that the other driver will stop before entering or crossing the intersection when he approaches and attempts to traverse it himself at an unlawful or excessive speed, and even when his speed is lawful he remains under duty to exercise due care to ascertain if the driver of

GROOME v. DAVIS.

the other car is going to violate the statutory requirement in order to avoid the consequences of such negligence, it being necessary to construe the pertinent statutes *in pari materia* and this result being consonant with such construction.

**3. Automobiles § 21—**

Where collision is caused by negligence of the drivers of both cars, a guest in one of the cars may recover against either of the drivers without regard to liability as between the drivers.

**4. Automobiles § 12e—**

The failure of a driver upon a servient highway to stop before entering or traversing a through highway intersection is not negligence *per se* nor *prima facie* negligence, but is merely evidence of negligence to be considered with the other evidence in the case.

**5. Same—**

The requirement to stop before entering or traversing an intersection of a through highway does not obtain until the proper sign has been erected by authority of the Highway Commission, and a motorist along a through highway may not assume that vehicles along a servient highway will stop unless he knows of the existence of the highway stop sign and makes such fact affirmatively appear in the evidence.

**6. Automobiles § 22—Evidence held for jury in guest's action against driver of car on through highway to recover for injuries from collision at intersection.**

Plaintiff was riding as a guest in a car driven by defendant on a through highway and was injured in a collision occurring at an intersection with a servient highway. The evidence tended to show that the driver of the car in which plaintiff was riding approached the intersection traveling at the rate of 65 to 70 miles an hour and entered the intersection at 55 or 60 miles an hour, and that the driver of the car along the servient highway approached the intersection at 60 miles an hour and entered the intersection without stopping as required by statute, the evidence further tended to show that the driver of the car in which plaintiff was riding could have seen the other car when 100 yards from the intersection. *Held:* Defendant's demurrer to the evidence should have been overruled, since defendant did not have the unqualified privilege of assuming that the driver of the other car would stop before entering the intersection, and since if defendant's speed was excessive and such speed rendered it impossible for defendant to avoid a collision, defendant's negligence in approaching the intersection at such speed constituted presumptive negligence continuing up to the moment of impact, and the failure of the driver of the other car to stop before entering the intersection being for the consideration of the jury, with other evidence in the case, in determining whether defendant was negligent, and whether such negligence was a proximate cause of plaintiff's injury.

**7. Automobiles § 20a—Evidence held not to show contributory negligence on part of guest as a matter of law.**

The failure of plaintiff guest to remonstrate with the driver of the car, traveling at a speed of 65 or 70 miles an hour on a through highway, and the failure of such guest to warn the driver of the approach of

another car along a servient highway to the intersection of the highways because she assumed that the driver saw such other car in the exercise of due care, *is held* not contributory negligence on the part of the guest as a matter of law.

APPEAL by plaintiff from *Stevens, J.,* at Second February Term, 1939, of WAKE. Reversed.

Plaintiff brought this action to recover damages for an injury sustained in an automobile collision through the alleged negligence of the defendant. The evidence tended to show that the plaintiff and his wife, a witness in this case, were guests of the defendant, riding in a car belonging to defendant and operated by him on the Smithfield-Clinton Highway, in the village of Newton Grove, Sampson County. At the point of the collision, State Highway No. 23, a main paved highway, is intersected by State Highway No. 55, referred to in the evidence as a dirt road. On this latter road there was a stop sign facing the intersection and approach to the main highway.

As the Davis car approached the intersection, the plaintiff Groome and Davis were riding on the front seat and Mrs. Groome was on the rear seat. There is evidence that, approaching the intersection in the direction in which the defendant was driving, one could see the intersection for a distance of about a quarter of a mile. The road was level and flat, with nothing to obstruct the view. When within 200 yards of the intersection the driver of the car could see down the intersecting highway about 100 yards. When within 100 yards of the approach he could see down the highway to the right approximately 150 yards. While there were weeds on Mr. Davis' right as he approached the intersection, they were 3½ or 4 feet high, and as defendant was seated in his automobile, he was 5½ or 6 feet from the ground, having about two feet clearance of vision over and above the weeds. Mrs. Groome testified that she actually saw the automobile, which, it turned out, belonged to a man named Lovie, approaching when defendant was within 100 yards of the intersection, at which time Davis was running 70 miles an hour. The approaching car was being driven about the same rate of speed—60 or 65 miles an hour. The defendant made no attempt to slow down until about 100 feet from the intersection, when he slowed down to about 55 miles an hour. When the defendant was within the intersection and near the southeast side of the intersecting road, the car driven by Lovie crashed into defendant's car, and as a result of the collision plaintiff was seriously injured.

Mrs. Groome testified: "When the two cars came together, we spun around the road, went to the other side of the highway, went into a ditch and lodged up against a tree 40 feet from the highway, on Mr. Davis' left side of the highway. There was nothing to obstruct Mr. Davis'

view of that automobile coming from the side road to his right.   I saw it clearly.   I saw it at a distance of 100 yards from the intersection."

This witness testified that Davis had been driving at a high rate of speed between Raleigh and the place of the collision, but had no trouble prior to the collision; that she made no protest against any of his driving; that she hesitated to do so because she was an invited guest of Mr. Davis; that she saw the car coming down the dirt road and assumed that Mr. Davis saw it also and naturally thought he was going to stop every second, so did not say anything.

H. B. Sanders, a witness for the plaintiff, testified that in the village of Newton Grove, where the collision occurred, he was standing in front of his store; that the buildings were on the left side of the road as Mr. Davis approached from Smithfield.   Some forty-five families normally live in the village, but on this particular afternoon there were approximately fifty people standing in the space around the stores and houses on the left side of the intersection; that Mr. Davis could have seen the car coming over the intersecting highway seventy yards back by observing very much at all, although it would have been a little difficult. If he looked closely he could have seen it for more than seventy-five yards, but for seventy-five yards he had a clear view; that Mr. Davis was driving 65 to 70 miles an hour before applying the brake; he applied his brakes "the length of this courtroom from the intersection," and his car was traveling 55 to 60 miles an hour when the two cars crashed together.   The other car was traveling 60 to 65 miles an hour and did not slow up at all.   This was the Lovie car.   The Chrysler car driven by defendant was struck on the right side, and the damage was from the right front wheel to the rear of the running board.

There was other testimony as to the rate at which the defendant was driving, as to the result of the collision, as to the effect upon the Chrysler car, and as to the nature and extent of the injury to the plaintiff.

At the conclusion of plaintiff's evidence the defendant moved for judgment as of nonsuit, which motion was allowed, and plaintiff appealed.

*Thomas W. Ruffin and Douglass & Douglass for plaintiff, appellant.*
*Smith, Leach & Anderson for defendant, appellee.*

SEAWELL, J.   In this case we find two automobilists approaching a common intersection on different highways simultaneously, each traveling at a speed *prima facie* negligent and colliding within the intersection. The issue is not between them, but between the defendant Davis and the plaintiff Groome, a guest in his car.   Lovie, the other driver, is not sued.   Questions of right of way, however, are raised as affecting the

exercise of due care on the part of the defendant, and as bearing on the question of proximate cause of plaintiff's injury, sustained in the collision.

Defendant was traveling a through highway at a speed of about 65 miles an hour, which he reduced to about 55 miles an hour before going into the intersection. The Lovie car approached from the right over a road on which had been posted a stop sign which, under the law, required him to stop before entering the main highway. He approached the intersection at a speed of about 65 miles per hour, which he did not diminish up to the time of the collision.

There are two arguments made by defendant's counsel in support of the judgment sustaining the demurrer to the evidence:

They contend that the speed of defendant's automobile had no causal connection with the collision, since his car was stricken on the side, and if the speed had been slightly greater or slightly less the collision would not have occurred. But there is more involved in speed than the mere chance of being at a particular spot at a given instant. The event may not be left in the lap of the gods, when it should have been kept in the hands of the driver.

It is also contended that the defendant, having the right of way, had the right to assume that Lovie would observe the stop sign, since the law required him to stop before entering the intersection of the through highway; and that the negligence producing the injury, if any, was, as a matter of law, solely that of Lovie, since, as contended, his was the intervening act of an intelligent agent, unforeseeable by defendant, which, as efficient cause of the injury, insulated his negligence, if any, from such result. As to this, involving, as we think it does, the defendant's manner of approach to the intersection, we think counsel have overestimated the degree of reliance defendant was legally authorized to place on the observance of the stop sign, and have overlooked the conditions under which the assumption may be made.

Presumably the stop sign was erected under authority of chapter 148, Public Laws of 1927, section 21—see Michie's North Carolina Code of 1935, section 2621 (63)—which reads as follows: "Vehicles must stop at certain through highways. The State Highway Commission with reference to State Highways and local authorities with reference to highways under their jurisdictions are hereby authorized to designate main traveled or through highways by erecting at the entrances thereto from intersecting highways signs notifying drivers of vehicles to come to a full stop before entering or crossing such designated highway, and whenever any such signs have been so erected it shall be unlawful for the driver of any vehicle to fail to stop in obedience thereto. That no failure so to stop, however, shall be considered contributory negligence

*per se* in any action at law for injury to persons or property; but the facts relating to such failure to stop may be considered with the other facts in the case in determining whether the plaintiff in such action was guilty of contributory negligence."

Under the same chapter of the Public Laws of 1927, and chapter 311, Public Laws of 1935—see Michie's North Carolina Code, 1935, section 2621 (46)—we find the following speed regulations: "(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing. (b) Where no special hazard exists the following speeds shall be lawful, but any speed in excess of said limits shall be *prima facie* evidence that the speed is not reasonable or prudent and that it is unlawful: (1) Twenty miles per hour in any business district. (2) Twenty-five miles per hour in any residence district. (3) Thirty-five miles per hour for motor vehicle designed, equipped for, or engaged in transporting property; and thirty miles per hour for such motor vehicle to which a trailer is attached. (4) Forty-five miles per hour under other conditions." No suggestion was made in the court below that paragraphs 1, 2, or 3 might apply in this case.

The law further provides—Michie's North Carolina Code of 1935, section 2621 (46) (c): "The fact that the speed of a vehicle is lower than the foregoing *prima facie* limits shall not relieve the driver from duty to decrease speed when approaching and crossing an intersection . . . and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

Laws and regulations of this character are intended to facilitate travel upon arterial roads, but not at the expense of life and limb. They are, rather, intended to afford an additional protection, both to those traveling on arterial highways and those entering them from intersecting roads, from dangers arising because of the frequency of travel along the through highway. To keep the emphasis where it belongs, they must be taken *in pari materia,* as a whole, and the constituent parts given only that influence in the resulting complex which is consistent with this purpose. We cannot, therefore, approve of a rule which, disregarding the duty of all persons to observe due care when using the intersection, would justify blind reliance on the assumption that another automobilist approaching it will observe a stop sign, or which would encourage a stubborn adherence to a supposed right of way under all conditions—a rule which would be more likely to produce disaster than to promote safety.

The holder of the right of way, even on an arterial highway, does not possess an unqualified privilege in its exercise. The duty still rests on him to use due care in approaching an intersection, notwithstanding he may know that it is protected by a stop sign on the less favored highway; and without the exercise of such care his right of way will not avail him. His right to rely on the assumption that a driver approaching the intersection on the servient road will observe the stop sign is forfeited when he approaches the intersection and attempts to traverse it at an unlawful or excessive speed. And even when he is within the law, it may be necessary for him to surrender his right of way, in the exercise of due care, to avoid the consequences of another's negligence. The principles, thus summarized, are clearly stated in leading texts: Huddy on Automobiles, 9th Ed. 3-4, pp. 228, 263, 264, 277; Berry on Automobiles, 3.2; Babbitt on Motor Vehicles, 4th Ed., 439, 461; and they find expression in numerous well considered opinions of the courts, from which we cite the following as containing a more detailed exposition of the rules under consideration than we find convenient to make here: *Sebastian v. Motor Lines,* 213 N. C., 770, 197 S. E., 539; *Anthony v. Knight,* 211 N. C., 637, 191 S. E., 323; *McCulley v. Anderson* (Neb.), 227 N. W., 321; *Richard v. Neault,* 126 Maine, 17, 135 Atl., 524, 525; *Brown v. Saunders,* 44 Ga. App., 114, 160 S. E., 542; *Rosenau v. Peterson,* 147 Minn., 95, 179 N. W., 647; *Carter v. Vadeboncoeur,* 32 Manitobia L. R., 102, 11 B. R. C., 1113; *Carlson v. Meusenberger,* 200 Iowa, 65, 204 N. W., 432; *Ray v. Brannon,* 196 Ala., 113, 72 So., 16.

The right of a driver on the more favored road to assume that another approaching on the servient road will observe a stop sign, or laws respecting the right of way, is conditioned on his own behavior, and the assumption can be made only when it will not be inconsistent with the paramount duty to exercise due care, incumbent on the person who would assert the right. Simply stated, the right to make the assumption is available only to one who himself is free from negligence. Some states, by express wording of the statute, have rendered such a defense unavailable to negligent drivers; *Morris v. Bloomgren,* 127 Ohio State, 147, 187 N. E., 2, 89 A. L. R., 831; *Wolfe v. Fay Bros. Auto and Taxicab Co.,* 18 La. App., 321, 138 So., 453; *Jordan v. Western Motor Ways,* 213 Cal., 606, 2 P. (2nd), 786; and in others the courts have reached the same result by judicial reasoning. Here the rule is fairly deducible from a consideration of the statute itself, its purpose, and its incidence on the safe use of the highways under regulatory authority.

It will be found that most of the cases in which questions of right of way are featured are between parties who have reciprocal duties with regard to the intersection and mutual rights which are at issue in the action, where the rule is of value in fixing liability between the two,

and they do not concern third persons who had no duties in the premises and to whom both may be liable. As to the latter, to whom negligence is not attributable, comparative rights to the highway between two drivers, both of whom are negligent, will not defeat recovery. *Anthony v. Knight, supra; Chiles v. Rolf et al.* (So. Dak.), 201 N. W., 154, 155.

It is argued that the view here taken deprives the defendant of the benefit of the common law rule that one is not required to anticipate the negligence of another. It is pointed out that while under that rule it is still a duty to use due care in avoiding the negligence of another after it has been discovered, or could have been discovered by the exercise of proper care, this does not require anticipation of such negligence. But the common law rule remains unimpeached when we recall that we are mainly considering statutory duties and that it may be said to be the law itself, which, in providing against recognized dangers, makes the anticipation. Many of the duties of automobilists in the use of highways, and especially in approaching and using intersections, are regulated by statutes, which impose duties unknown to the common law. When duties are imposed by statutes which are likely to create standards of care higher than those commonly found in ordinary men, and where perfect compliance cannot, therefore, be reasonably expected, a hazard is created against which provision may be expected in the law.

The stop sign statute under consideration bears evidence of a recognition of the human equation—the imperfection of the human machine which, since we cannot completely remove, we cannot wholly ignore. Failure to observe the stop sign is not negligence *per se,* not even *prima facie* negligence, just evidence of negligence. Some countervailing provision might be expected in related statutes. We think this is found in the requirement that speed be effectively reduced before entering intersections, so that the car shall be under reasonable control and the driver left with some degree of opportunity to cope with hazards which might be reasonably expected to arise, not under ideal conditions, but under conditions that are commonly known to exist. *Sebastian v. Motor Lines, supra; Hinnant v. R. R.,* 202 N. C., 489, 494, 163 S. E., 555; *Harton v. Telephone Co.,* 141 N. C., 455, 54 S. E., 299. Without reference to the fact that the duty may arise under the statute, Huddy on Automobiles, 9th Ed., 3-4, p. 346, states broadly: "Although a traveler on the highway has a right to rely to some extent on the expectancy that other travelers will obey the law and will use reasonable care not to injure him, yet he still has the duty to use ordinary care and prudence to avoid an injury that might otherwise result from the negligence of another." *Ray v. Brannon, supra.*

It was the duty of the defendant to use ordinary care in approaching the intersection. In this instance ordinary care means that degree of

care which an ordinarily prudent man would exercise to avoid such dangers as reasonably might be anticipated. If the intersection was obscured, it was his duty to reduce his speed effectively, in lieu of visual assurance; if unobstructed it was his duty to use his eyes, and his judgment as well, with regard to cars approaching on the intersecting road. If he discovered, or by the exercise of reasonable care could have discovered, that Lovie apparently did not intend to observe the stop sign, or that because of his excessive speed he could not do so, it was defendant's duty to use the means in his power to avoid the collision. It does not seem to be a logical defense if, when the discovery was made, or should have been made, he was powerless to act because of previous negligence on his part.

In deciding this question we cannot confine our attention narrowly to the area of the intersection and the moment of the collision. From the time defendant came into the zone of obligation, and the duty of care with regard to this intersection arose, his acts must be considered as a continuing sequence. The negligence of the defendant, if the jury should find such negligence, might have begun some distance up the road when he surrendered control for speed, finding later he could not retrieve it. We need not be reminded that the speed relation is dominant in the control of a car—in the ability to stop it within a given time and distance, and to turn to the right or left with safety in order to avoid a collision. The defendant brought with him into the intersection this potentiality of disaster and was presumptively negligent down to the time of the collision. The presence of a stop sign and the fact that it was overrun by Lovie will not necessarily, and as a matter of law, absolve him from negligence, or insulate any negligence of which he might have been guilty from its natural and probable consequences as a proximate or contributing cause. The jury is at liberty to infer that they were concurrently negligent. *Wooten v. Smith, ante,* 48; *Cunningham v. Haynes,* 214 N. C., 456, and cited cases; *Anthony v. Knight, supra; Hinnant v. R. R., supra; Sebastian v. Motor Lines, supra; Brown v. R. R.,* 208 N. C., 57, 179 S. E., 25; *Caddell v. Powell,* 70 Fed. (2d), page 123.

We do not wish to be understood as saying that the erection and presence of a stop sign might not be considered by the jury as bearing upon the negligence of a driver on the arterial highway or upon the question of proximate cause. The contrary is true. When properly presented, it must be considered as other evidence in the case upon these questions. "If he knows of the stop sign, it is a factor on which, with others, he may base his judgment as to the safety of the crossing." *Adams v. Gardner,* 306 Pa., 576, 160 Atl., 589.

Since other questions of right of way are involved, we have, for convenience of discussion, assumed that defendant had a knowledge of the existence of the stop sign upon which he seeks to rely. The evidence is negative in this respect. He could not rely on it unless he knew of its presence, and such knowledge must affirmatively appear in the evidence. While, generally speaking, persons using the highway are presumed to know the law of the road, the stop law did not become applicable to this intersection until the sign was erected by authority of the Highway Commission.

We cannot find, as a matter of law, evidence of contributory negligence on the part of the plaintiff such as would bar his recovery.

Taking the evidence in the light most favorable to the plaintiff, the issue is one for the jury. Factual adjustments and appraisals are required, the making of which belong exclusively to them. *Cole v. Koonce*, 214 N. C., 188.

The judgment of nonsuit is
Reversed.