ELMER COX, ADMINISTRATOR OF PATTY MATTHEWS COX, v. HENNIS FREIGHT LINES, INC.,
and
LETHIE MATTHEWS v. HENNIS FREIGHT LINES, INC.

(Filed 22 August, 1952.)

**1. Trial § 23a—**

>   Nonsuit may not be entered upon a particular theory of liability unless such theory is not supported by the pleadings, liberally construed in favor of the plaintiff, or by the evidence, considered in the light most favorable to plaintiff.

**2. Trial § 22c—**

>   Upon motion to nonsuit, the credibility of witnesses and the weight to be given their testimony are matters within the province of the jury, and it may accept as true a part of the testimony offered by a party and reject as false the remainder of such testimony."

**3. Automobiles § 18h (2)—Evidence held for jury in this action involving collision at intersection controlled by automatic signals.**

>   Plaintiffs' evidence tended to show that the green signal light was with the driver of the car in which one plaintiff and the intestate of the other plaintiff were riding as guests, and that their driver proceeded first into the intersection and that the car was struck by defendant's tractor-trailer,

which entered the intersection from the right without giving the car time to clear the intersection, although its driver could have observed the prior entry of the car into the intersection, *held:* Defendant's motions to nonsuit were properly denied, since plaintiffs' evidence tends to show that the collision occurred as a proximate result of the negligence of defendant's driver in crashing the stop light, or in his failure to maintain a proper lookout, to keep his vehicle under reasonable control, or in driving at a speed greater than was reasonable and prudent under the existing conditions.

**4. Automobiles § 8i:  Municipal Corporations § 39—**

A municipal corporation is given authority by statute to install automatic traffic control signals and to compel their observance by ordinance. G.S. 20-169.

**5. Automobiles § 8i—**

A motorist is guilty of negligence as a matter of law if he fails to stop in obedience to a red traffic light as required by municipal ordinance, and such negligence is actionable if it proximately causes the death or injury of another.

**6. Same—**

The fact that a motorist has a green traffic light facing him as he approaches and enters an intersection does not relieve him of the duty to maintain a proper lookout, to keep his vehicle under reasonable control, and to drive his vehicle at a speed which is reasonable and prudent under the existing conditions, or exonerate him from legal liability for the death or injury of another proximately resulting from his failing to perform his legal duty in one or more of these respects.

**7. Automobiles § 18a—**

In an action based upon defendant's failure to observe and obey an automatic traffic control signal, the failure of the complaint to allege that such signal was maintained and operated under an ordinance of the municipality is a defect, but such defect is cured by the answer when it alleges this material fact.

**8. Pleadings § 19—**

A fatal omission in the complaint is cured if such omission is supplied by an affirmative allegation of the answer.

**9. Automobiles §§ 8i, 18i—Right of motorist to rely on traffic control light is not subject to limitation that he be free of negligence.**

When supported by the evidence, the court should give in substance at least a requested instruction to the effect that if the automatic signal light was green facing the driver of defendant's truck, such driver, in the absence of anything which should have given him notice to the contrary, had the right to assume and act upon the assumption that the driver of a vehicle entering the intersection along an intersecting street would not only exercise ordinary care for his own safety as well as the safety of his passengers, but would bring his car to a stop before entering the intersection in obedience to the traffic signal, and an instruction to the effect that the right of defendant's driver to rely upon the signal device obtained only

if defendant's driver was exercising due care and was free from negligence, is error.

**10. Negligence § 9—**

The rule that a party is not under duty to anticipate disobedience of law or negligence on the part of others, but in the absence of anything which gives or should give notice to the contrary, is entitled to assume and act on the assumption that others will obey the law and exercise ordinary care, *held* not subject to the limitation that such party be absolutely free of negligence on his own part, although such rule would not absolve him from liability if his own negligence constitutes the proximate cause, or one of the proximate causes, of the injury.

APPEAL by defendant from *Gwyn, J.,* and a jury, at November Term, 1951, of YADKIN.

Two consolidated civil actions arising out of a collision between two motor vehicles at a street intersection, where traffic was regulated by automatic traffic control signals.

These are the facts:

1. Rockford Street, which runs northeast and southwest, and Worth Street, which runs northwest and southeast, intersect and cross each other in a somewhat congested area in the Town of Mount Airy, North Carolina. Each street is paved, and has a width of 30 feet.

2. Traffic at the intersection is regulated by automatic traffic control signals erected under an ordinance of the Town of Mount Airy. These signals are suspended over the center of the intersection, and display successively green, yellow, and red lights in four directions, namely, both ways on Rockford Street and both ways on Worth Street. The lights are synchronized so that green lights are exhibited to motorists on Rockford Street when red lights are shown to motorists on Worth Street, and *vice versa.* The ordinance provides, in substance, that a motorist facing a green light may proceed straight through the intersection or turn right or left on it, and that a motorist facing a red light must stop before entering the intersection and remain standing until the light confronting him changes to green. A violation of the ordinance is a misdemeanor.

3. At eleven o'clock in the forenoon on 21 November, 1950, a northeast-bound Chevrolet automobile driven by Marvin Matthews, which approached and entered the intersection on Rockford Street, and a northwest-bound tractor-trailer combination owned by the defendant Hennis Freight Lines, Inc., which approached and entered the intersection on Worth Street, collided on the intersection, killing Patty Matthews Cox and injuring Lethie Matthews, who were guests in the Chevrolet car. The automatic traffic control signals were working at the time of this event, and the tractor-trailer combination was then being operated by its

regular driver, Gerald Fisher Hamer, on a business mission for the defendant.

4. These two actions grow out of the collision between the Chevrolet automobile and the tractor-trailer combination. The plaintiff Elmer Cox, as administrator, sues the defendant for damages for the death of his intestate, Patty Matthews Cox, and the plaintiff Lethie Matthews sues the defendant for damages for her personal injuries. The cases were consolidated for trial by consent of the parties, each of whom introduced evidence.

5. According to the testimony presented by the plaintiffs, the tragedy happened in this way:

Patty Matthews Cox and Lethie Matthews traveled northeastward along Rockford Street as guests in the Chevrolet automobile driven by Marvin Matthews. As the Chevrolet car neared the intersection of Rockford and Worth Streets, Marvin Matthews was confronted by a red light. He brought the Chevrolet to a complete stop just outside the intersection, and waited for the light to change. When the light facing him became green, Marvin Matthews put the Chevrolet into motion, entered the intersection substantially in advance of the tractor-trailer combination which was then moving northwesterly along Worth Street, and undertook to proceed straight through the intersection at a speed not exceeding ten miles an hour. Although the prior entry and occupation of the intersection by the Chevrolet automobile was clearly visible to him for an appreciable time as he approached the intersection, the driver of the tractor-trailer combination drove northwestwardly on Worth Street at a speed approximating 40 miles an hour, proceeded onto the intersection without changing the course of his vehicle or making any attempt to slacken its speed until a mere instant before the impending collision, and struck the Chevrolet car, killing Patty Matthews Cox and inflicting upon Lethie Matthews bodily injuries which necessitated the amputation of her right leg and made her a virtual cripple.

6. The evidence adduced by the defendant gives this version of the unfortunate occurrence:

The tractor-trailer combination moved northwestward on Worth Street toward the intersection at a speed of "somewhere between 20 and 25 miles an hour." At the same time, Marvin Matthews, who "could see southwardly and to his right on Worth Street approximately 150 feet," drove his Chevrolet automobile, which was substantially more distant from the intersection than the tractor-trailer, in a northeastern direction on Rockford Street. When the tractor-trailer combination reached a point 75 feet from the intersection, the traffic lights changed so that the light confronting the driver of the tractor-trailer was green, and the light facing Marvin Matthews was red. The traffic lights continued in this state

until the collision occurred. Inasmuch as he had the green light in his favor and believed that Marvin Matthews would stop before entering the intersection in obedience to the red light facing Rockford Street, the driver of the tractor-trailer combination entered the intersection when the Chevrolet "car was around 10 to 15 feet from the intersection," and undertook to proceed straight through the intersection. Instead of stopping before entering the intersection, Marvin Matthews drove his Chevrolet through the red light confronting him, proceeded onto the intersection at unabated speed, and crashed against the side of the tractor-trailer combination, causing the collision and its tragic consequences. Just as soon as he realized that Marvin Matthews would continue on his way without stopping or even slowing down in utter disregard of the red light facing Rockford Street, the driver of the tractor-trailer combination tried in vain to avert the impending collision by applying his power brakes.

7. These issues were submitted to the jury in the death action:

(1) Was the death of Patty Matthews Cox, deceased, caused by the negligence of the defendant, as alleged? (2) What amount, if any, is the plaintiff entitled to recover of the defendant? The jury answered the first issue "Yes," and the second issue "$10,000.00." The court entered judgment for the plaintiff Elmer Cox, Administrator of Patty Matthews Cox, on this verdict, and the defendant appealed, assigning errors.

8. These issues were submitted to the jury in the personal injury action: (1) Was the plaintiff Lethie Matthews injured by the negligence of the defendant, as alleged? (2) What amount, if any, is the plaintiff entitled to recover of the defendant? The jury answered the first issue "Yes," and the second issue "$45,000.00." The court entered judgment for the plaintiff Lethie Matthews on the verdict, and the defendant appealed, assigning errors.

9. The defendant asserts by its assignments of error that the trial judge erred in refusing to dismiss the actions upon compulsory nonsuits after all the evidence was in; that the trial judge erred in failing to charge the jury as requested in special prayers for instructions tendered by the defendant; and that the trial judge erred in the instructions actually given by him to the jury.

*J. T. Reece, Wm. M. Allen, and Hoke F. Henderson for plaintiffs, appellees.*

*Folger & Folger for defendant, appellant.*

Ervin, J. The court cannot submit a case to the jury on a particular theory unless such theory is supported by both the pleadings and the

evidence. *Hooper v. Glenn,* 230 N.C. 571, 53 S.E. 2d 843; *Ewing v. Kates,* 196 N.C. 354, 145 S.E. 673; *Pittman v. Tobacco Growers Association,* 187 N.C. 340, 121 S.E. 634; *Frick Co. v. Boles,* 168 N.C. 654, 84 S.E. 1017; *Wilson v. Railroad,* 142 N.C. 333, 55 S.E. 257. In ascertaining whether a pleading upholds a theory, the court construes the allegations of the pleading with liberality in favor of the pleader with a view to presenting the case on its real merits. G.S. 1-151; *Lyon v. R. R.,* 165 N.C. 143, 81 S.E. 1. In determining the sufficiency of evidence to sustain the theory of the complaint and to withstand the motion of the defendant for a compulsory nonsuit, the court interprets the evidence in the light most favorable to the plaintiff. *Graham v. Gas Co.,* 231 N.C. 680, 58 S.E. 2d 757, 17 A.L.R. 2d 881; *Higdon v. Jaffa,* 231 N.C. 242, 56 S.E. 2d 661; *Potter v. Supply Co.,* 230 N.C. 1, 51 S.E. 2d 908; *Hughes v. Thayer,* 229 N.C. 773, 51 S.E. 2d 488. In performing this task, the court bears in mind that the credibility of witnesses and the weight to be given to their testimony are matters within the province of the jury, and that the jury may accept as true a part of the testimony offered by a party and reject as false the remainder of such testimony. *Graham v. Gas Co., supra; Casada v. Ford,* 189 N.C. 744, 128 S.E. 344; *Hadley v. Tinnin,* 170 N.C. 84, 86 S.E. 1017; *Maynard v. Sears,* 157 N.C. 1, 72 S.E. 609; *Newby v. Edwards,* 153 N.C. 110, 68 S.E. 1062; *S. v. Smallwood,* 75 N.C. 104.

When the pleadings and the evidence in the cases now before us are tested by these rules, it is manifest that they support two theories of recovery. These theories are somewhat alternative in character, and are summarized in the numbered paragraphs set forth below:

1. The driver of the defendant's tractor-trailer combination was guilty of negligence in that he failed to stop in obedience to a red traffic light as commanded by the ordinance, and his negligence in this respect proximately caused the death of Patty Matthews Cox and the personal injury of Lethie Matthews.

2. Marvin Matthews drove the Chevrolet automobile into the intersection first and undertook to proceed straight through it ahead of the tractor-trailer combination, whose driver could observe the prior entry and occupancy of the intersection by the Chevrolet car. Notwithstanding this, the driver of the tractor-trailer combination immediately proceeded onto the intersection without permitting the Chevrolet automobile to clear the intersection or its pathway thereon. In so doing, the driver of the tractor-trailer combination was negligent in that he failed to maintain a proper lookout, or in that he failed to keep his vehicle under reasonable control, or in that he drove his vehicle at a speed greater than was reasonable and prudent under the conditions then existing. The negligence of the driver of the tractor-trailer combination in one or more of

these respects, either of itself or in conjunction with concurrent negligence on the part of Marvin Matthews, proximately caused the death of Patty Matthews Cox and the personal injury of Lethie Matthews, irrespective of the color of the traffic light confronting the driver of the tractor-trailer combination at the time of his entry into the intersection.

These theories rest upon substantial legal foundations. The Legislature has decreed in express terms that "local authorities shall have power to provide by ordinances for the regulation of traffic by means of . . . signaling devices on any portion of the highway where traffic is heavy or continuous." G.S. 20-169. In consequence, the Town of Mount Airy acted within the limits of its authority as a municipal corporation in enacting its ordinance and in installing its automatic traffic control signals. Since the ordinance is designed to guard the safety of persons using the public streets of the municipality, a motorist is negligent as a matter of law if he fails to stop in obedience to a red traffic light as required by the ordinance, and his negligence in that particular is actionable if it proximately causes the death or injury of another. *Boles v. Hegler,* 232 N.C. 327, 59 S.E. 2d 796; *Tysinger v. Dairy Products,* 225 N.C. 717, 36 S.E. 2d 246; *Dillon v. Winston-Salem,* 221 N.C. 512, 20 S.E. 2d 845; *Holland v. Strader,* 216 N.C. 436, 5 S.E. 2d 211; *King v. Pope,* 202 N.C. 554, 163 S.E. 447; *Wolfe v. Coach Line,* 198 N.C. 140, 150 S.E. 876; *Wolfe v. Baskin,* 137 Ohio St. 284, 28 N.E. 2d 629. The mere fact that the operator of a motor vehicle may have a green light facing him as he approaches and enters an intersection where traffic is regulated by automatic traffic control signals does not relieve him of his legal duty to maintain a proper lookout, to keep his vehicle under reasonable control, and to drive his vehicle at a speed which is reasonable and prudent under existing conditions, or exonerate him from legal liability for the death or injury of another proximately resulting from his failure to perform his legal duty in one or more of these respects. *Bobbitt v. Haynes,* 231 N.C. 373, 57 S.E. 2d 361; *Sebastian v. Motor Lines,* 213 N.C. 770, 197 S.E. 539; *Rose v. Campitello,* 114 Conn. 637, 159 A. 887; *Davis v. Dondanville,* 107 Ind. App. 665, 26 N.E. 2d 568; *Landers v. Mahler,* 295 Ill. 498, 15 N.E. 2d 13; *Capillon v. Langsfeld* (La. App.), 171 So. 194; *McCormick & Co. v. Cauley* (La. App.), 168 So. 783; *U. S. Fidelity & Guaranty Co. v. Continental Baking Co.,* 172 Md. 24, 190 A. 768; *Shea v. Judson,* 283 N.Y. 393, 28 N.E. 2d 885; *Schmidt v. City Ice & Fuel Co.,* 60 Ohio App. 29, 19 N.E. 2d 514; *Radobersky v. Imperial Volunteer Fire Dept.,* 368 Pa. 235, 81 A. 2d 865; *Wilson v. Koch,* 241 Wis. 594, 6 N.W. 2d 659.

These things being true, the court rightly refused to nonsuit the actions. In reaching this conclusion, we do not overlook the circumstance that the first theory of recovery presented by plaintiffs is defectively stated in

their pleadings. The complaints do not allege, as they ought, that the automatic traffic control signals at the intersection involved in the tragedy were maintained and operated under an ordinance of the Town of Mount Airy. *Stewart v. Cab Co.,* 225 N.C. 654, 36 S.E. 2d 256. It appears, however, that the defendant sets forth this material fact in its answers in complete detail. As a consequence, the rule that a defective pleading may be aided by the allegations of the adverse party applies. Under this rule, the answer of a defendant aids the complaint, and cures an omission if it affirmatively alleges a material fact not alleged by the plaintiff. *Ricks v. Brooks,* 179 N.C. 204, 102 S.E. 207; *Harvell v. Lumber Co.,* 154 N.C. 254, 70 S.E. 389; *Bank v. Fidelity Co.,* 126 N.C. 320, 35 S.E. 588, 83 Am. S. R. 682; *Whitley v. Railroad Company,* 119 N.C. 724, 25 S.E. 1018; *Lockhart v. Bear,* 117 N.C. 298, 23 S.E. 484; *Willis v. Branch,* 94 N.C. 142; *Johnson v. Finch,* 93 N.C. 205; *Pearce v. Mason,* 78 N.C. 37; *Garrett v. Trotter,* 65 N.C. 430.

Counsel for the defendant aptly tendered to the court written requests for these special instructions:

"1. The operator of defendant's truck was not under the duty of anticipating negligence on the part of the operator of the Matthews car and in the absence of anything which should have given him notice that the operator (of the Matthews car) was not going to stop at the intersection . . ., the operator of defendant's truck was entitled to assume and to act on the assumption that the operator of the Matthews car would exercise ordinary care for his own safety and the safety of the occupants of his car and bring his car to a stop before entering the intersection, if the signaling device had a red or stop signal at the intersection at the time the Matthews car approached and entered the intersection."

"2. The court charges you that if the signal light was green facing the driver of defendant's truck . . . at the time defendant's driver approached the intersection, and there was nothing to . . . prevent the driver of the Matthews car from seeing the truck as it approached the intersection, there would be no duty on defendant's driver to anticipate that Matthews would fail to stop as required by the . . . ordinance, and . . . the signal light, and in the absence of anything which gave or should have given notice to the contrary, defendant's driver was entitled to assume and to act on the assumption . . . that Matthews would not only exercise ordinary care for his own safety as well as (that of) those riding in his car, but would act in obedience to the ordinance . . . and the signaling device . . . before entering the intersection."

Instead of giving such instructions, the court charged the jury on this aspect of the controversy in this language: "As long as the operator of a motor vehicle upon a public street or highway is exercising due care, he has the right to rely upon signal devices erected and maintained by a

municipal corporation. As long as the operator of a motor vehicle upon a public street is in the exercise of due care, he has the right to assume that others who are operating along the highway will obey the laws and ordinances regulating the operation of motor vehicles, unless there are circumstances to put him on notice to the contrary. If Gerald Fisher Hamer, the defendant's driver, was in the exercise of due care and if there were no circumstances to put him on notice that Marvin Matthews was failing to observe and obey the law, if Marvin Matthews did fail to observe and obey the law, then if Gerald Fisher Hamer, the defendant's driver, under those circumstances, drove into the intersection while the light facing him was green, it would not be negligence on his part to assume that Marvin Matthews would obey the law and stop if the red light was facing him."

The defendant asserts in its assignments of error that the court erred in refusing the requests for special instructions, and in charging the jury as set out above.

The requests of the defendant for special instructions are sanctioned by this well settled doctrine: One is not under the duty of anticipating disobedience of law or negligence on the part of others, but in the absence of anything which gives or should give notice to the contrary a person is entitled to assume, and to act on the assumption, that others will obey the law and exercise ordinary care. *Chaffin v. Brame,* 233 N.C. 377, 64 S.E. 2d 276; *S. v. Hill,* 233 N.C. 61, 62 S.E. 2d 532; *Bobbitt v. Haynes, supra; Wilson v. Motor Lines,* 230 N.C. 551, 54 S.E. 2d 53; *Cox v. Lee,* 230 N.C. 155, 52 S.E. 2d 355; *Dawson v. Transportation Co.,* 230 N.C. 36, 51 S.E. 2d 921; *Tyson v. Ford,* 228 N.C. 778, 47 S.E. 2d 251; *Gaskins v. Kelly,* 228 N.C. 697, 47 S.E. 2d 34; *Hill v. Lopez,* 228 N.C. 433, 45 S.E. 2d 539; *Tysinger v. Dairy Products, supra; Cummins v. Fruit Co.,* 225 N.C. 625, 36 S.E. 2d 11; *Hobbs v. Coach Co.,* 225 N.C. 323, 34 S.E. 2d 211; *Cab Co. v. Sanders,* 223 N.C. 626, 27 S.E. 2d 631; *Montgomery v. Blades,* 222 N.C. 463, 23 S.E. 2d 844; *Tarrant v. Bottling Co.,* 221 N.C. 390, 20 S.E. 2d 565; *Reeves v. Staley,* 220 N.C. 573, 18 S.E. 2d 239; *Murray v. R. R.,* 218 N.C. 392, 11 S.E. 2d 326; *Guthrie v. Gocking,* 214 N.C. 513, 199 S.E. 707; *Sebastian v. Motor Lines, supra; Quinn v. R. R.,* 213 N.C. 48, 195 S.E. 85; *Hancock v. Wilson,* 211 N.C. 129, 189 S.E. 631; *James v. Coach Co.,* 207 N.C. 742, 178 S.E. 607; *Jones v. Bagwell,* 207 N.C. 378, 177 S.E. 170; *Cory v. Cory,* 205 N.C. 205, 170 S.E. 629; *Shirley v. Ayers,* 201 N.C. 51, 158 S.E. 840; *Wilkinson v. R. R.,* 174 N.C. 761, 94 S.E. 521; *Wyatt v. R. R.,* 156 N.C. 307, 72 S.E. 383; 38 Am. Jur., Negligence, section 192; 65 C.J.S., Negligence, section 15.

The able and conscientious trial judge was undoubtedly constrained to refuse the requests for special instructions and to charge the jury as

he did by statements in the opinions in *Groome v. Davis,* 215 N.C. 510, 2 S.E. 2d 771, and *Swinson v. Nance,* 219 N.C. 772, 15 S.E. 2d 284, to the effect that a motorist forfeits a right of way conferred upon him by positive legislative enactment and disables himself to claim the benefit of the doctrine invoked by the defendant in the instant cases if he is not altogether free from negligence.

Although these statements constituted mere *obiter dicta* in the *Groome case,* they were recognized and applied as established law by a divided court in the *Swinson case.* Inasmuch as the majority opinion in the last named decision stated that "ordinarily it is said that a defense of this kind is available only to one who is himself free from negligence, or, to put it more accurately, of negligence such as might stand in proximate relation to the injury," it may be argued that the majority of the Court in the *Swinson case* simply intended to uphold the sound proposition that a motorist whose negligence has proximately caused injury to another cannot absolve himself from liability by claiming that he assumed that the injured party or some third person would act lawfully and prudently. Be this as it may, it cannot be gainsaid that the statements in the opinions in the *Groome* and *Swinson cases* fully support the action of the trial judge in refusing the requests for special instructions and in charging the jury as he did.

It thus appears that we cannot pass on the assignments of error under consideration without either approving or disapproving the statements of the *Groome* and *Swinson cases.*

It may seem at first blush that the nebulous cause of legal righteousness will be served by classifying as legal pariahs all those who are guilty of negligence of any character, regardless of whether or not there is any probability, or even possibility, that their negligence will result in injury to themselves or others.

Second thought compels the conclusion, however, that the law of negligence as it has been established and enforced in this jurisdiction time out of mind cannot be reconciled with the unqualified assertions of the *Groome* and *Swinson cases* that the right to rely on a right of way created by positive legislation and to assume that other users of the highway will obey the law and exercise ordinary care is restricted to those motorists who are themselves absolutely free from negligence.

The validity of this view is obvious, we think, when the part of the charge under scrutiny and its inherent implications are stated. When this is done, the charge comes to this: If the two motor vehicles involved in these cases approached and reached the intersection when the traffic light facing the defendant's driver was green and the traffic light confronting the operator of the Chevrolet car was red, the defendant's driver had no right to rely on the automatic traffic control signals or to act on

the assumption that the operator of the Chevrolet car would observe the ordinance and stop in obedience to the red light if he, *i.e.,* the defendant's driver, was negligent in any respect, even though the attending circumstances reasonably indicated that the operator of the Chevrolet car intended to observe the ordinance and stop in obedience to the red light, and even though the attending circumstances also reasonably indicated that there was no likelihood whatever that the negligence of the defendant's driver would cause any injury to an occupant of the Chevrolet car or any other person.

The statements of the *Groome* and *Swinson* cases are not sound law. Their acceptance as such would produce virtual chaos in the administration of the law of negligence. They constitute a negation of the basic concept that since every person necessarily acts on appearances, his conduct in a given situation must be judged in the light of *all* the circumstances surrounding him at the time. *Malcolm v. Cotton Mills,* 191 N.C. 727, 133 S.E. 7; *Perkins v. Wood & Coal Co.,* 189 N.C. 602, 127 S.E. 677; *Forsyth v. Oil Mill,* 167 N.C. 179, 83 S.E. 320. They ignore the fundamental principle that the only negligence of legal importance is negligence which proximately causes or contributes to the injury under judicial investigation. *Smith v. Whitley,* 223 N.C. 534, 27 S.E. 2d 442; *Wall v. Asheville,* 219 N.C. 163, 13 S.E. 2d 260; *Byrd v. Express Co.,* 139 N.C. 273, 51 S.E. 851. When they are incorporated in a charge, they obscure the essential rule that "foreseeable injury is a requisite of proximate cause, and proximate cause is a requisite for actionable negligence, and actionable negligence is a requisite for recovery in an action for personal injury negligently inflicted." *Butner v. Spease,* 217 N.C. 82, 6 S.E. 2d 809. Indeed, an instruction embodying these statements has an exceedingly strong tendency to implant in the minds of jurors the fallacious notion that when a motorist, who undertakes to exercise a right of way conferred on him by positive legislation, is negligent in any degree, he makes himself legally accountable "for whatsoever shall come to pass," no matter how unforeseeable it may be. When all is said, the statements under scrutiny necessarily rest on a commixture of these somewhat perplexing theories: (1) That the nebulous cause of legal righteousness requires that a motorist be penalized for his negligence, even though it bears no causal relation whatever to the occurrence under judicial investigation; and (2) that the negligence of a motorist, however inconsequential it may be, can nullify positive legislation aptly designed to protect human life and limb at highway intersections.

For the reasons given, we are compelled to disapprove the statements of the *Groome* and *Swinson* cases, and to hold that the trial judge erred in carrying those statements into effect by refusing the requests for special instructions and by charging the jury as he did. The error of the judge

in so doing prejudiced the rights of the defendant, and necessitates a new trial of these cases. It is so ordered.

New trial.