15229

## SOUTH CAROLINA PUBLIC SERVICE AUTHORITY v. SPEAR-WANT LIQUIDATING CO. ET AL.

(13 S. E. (2d), 605)

*Messrs. R. M. Jefferies, Ben Hill Brown* and *James Julian Bush* for appellant,

*Messrs. Stoney, Crosland & Pritchard, Norval N. Newell* and *Marion F. Winter* for respondents,

March 11, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE CARTER.

On August 1, 1939, appellant instituted proceedings to condemn a one-half interest in a tract of 829 acres of land known as Hanover plantation, the other one-half interest therein having already been acquired through direct purchase from one of the tenants in common, Mr. W. P. Montague. A board of referees was appointed for the purpose of assessing the amount of compensation to be paid for the one-half interest in the lands. From the award made by this board, which was not signed by the referee appointed by appellant, an appeal was taken to the Court of Common Pleas. Upon trial of the case *de novo* before special presiding Judge W. H. Muller and a jury, a verdict was returned for respondents in the amount of $19,250.00. The Public Service Authority thereupon moved for a new trial, or a new trial *nisi*. This motion was overruled and the case now comes to the Supreme Court on appeal.

Appellant, by the first two exceptions, insists that the presiding Judge committed error in refusing its motion for a new trial, or a new trial *nisi*, for the reason that the testimony shows that the valuation placed upon the one-half interest in the land by the jury is so excessive, exorbitant and unconscionable as to shock all ideas of right and justice; such valuation being based, not upon the true or fair market value of the land as shows by the greater weight of the testimony, but upon caprice, prejudice and personal feelings.

This Court has held repeatedly that the granting of a new trial on the ground that a verdict is excessive is in the discretion of the trial Judge, and his ruling thereon will not be disturbed unless it is shown that "a

verdict is wholly unsupported by evidence, or is so excessive as to justify the inference that it was capricious, or influenced by passion, prejudice, or, other considerations not found in the evidence." *Steele v. Railway Co.*, 103 S. C., 102, 87 S. E., 639, 644; *Payne v. Cohen*, 168 S. C., 459, 167 S. E., 665; *Mishoe v. Railroad Company*, 186 S. C., 402, 197 S. E., 97, and numerous other cases.

Russell Williams, Jr., who had the "farming privileges" on the lands in question, testified as follows: "On breaking this land down, I call out of the 250 acres of cultivated land, I call 125 acres of it to be worth $100.00 an acre, making a total of $12,500.00. I call the other 125 acres to be worth $80.00, making $10,000.00. The 217 acres of swamp land I consider to be worth $30.00 an acre or a total of $6,500.00, and the 360 acres of upland timber I consider to be worth $40.00 an acre or $14,000.00. The house I consider to be worth $3,000.00, and the barn $1,500.00. There is one deep well on it, that I thought is worth $250.00, and a shallow well at $25.00. I have about three miles of ditching on the plat, and I thought to put the three miles of ditching a conservative figure on three miles of ditching to be about $635-.00. Recently I built some hog pens, brooder house, about $100.00 worth of stuff on there, and there is 240 rods of wire, including keeping my hogs in the ten-acre field there. The whole thing is $49,158.06 what I honestly think Hanover is worth." He also explained in detail his use of the land, and the production qualities thereof. Three other witnesses for the respondents valued the lands, respectively, at $40,000.00, $44,520.00 and $41,210.00. It was also testified that a state highway ran alongside the plantation for a distance of about a mile and a half. Valuations placed on the land by witnesses for appellant ranged from $12,000.00 to $15,785.00.

The presiding Judge did not abuse his discretion in refusing to grant a new trial. The reasoning expressed in his order shows that he recognized and

appreciated the responsibility resting upon him with reference to the setting aside, absolutely or conditionally, of the verdict. He stated that during the trial the jury paid the utmost attention, and that they considered the case long and seriously before reaching their decision. As already seen, witnesses valued the one-half interest in question at from $6,000.00 to $24,579.03. The jury is the tribunal to decide the weight to be given the testimony, and that body could accept or reject the valuation placed upon the land by any witness. Under the testimony, therefore, we cannot say that the amount of the verdict reached was so excessive as to warrant the conclusion that it was the result of caprice, passion, prejudice or other considerations not founded in the evidence.

Exception 3 charges the trial Court with error in overruling appellant's "motion to strike the testimony of J. Russell Williams, Jr., relating to values, since it appeared for the first time on cross examination that such values were based upon personal values and not market values," the contention being that "by such refusal the jury was allowed to take into consideration in arriving at its verdict, testimony of values of the property peculiar to the landowners as distinguished from its market value."

It is true that Mr. Williams stated that he based his valuation upon what the property was worth to him. He was not a real estate expert, but he had every reason to know the production qualities of the land and the income which he derived from its use. His testimony, therefore, was the expression of his opinion as to the market value of the property arrived at in the light of what it was worth to him were he buying it, as shown by the following question and answer: "The Court: Mr. Williams, in your testimony the values you place on this property to the effect that those values are not what you regard as the market value but what you regard as the value to yourself? Witness: I have never appraised any land in my life, and the only way

I could get at what a place is worth is what it would be worth to me if I went to buy a farm. I would take into consideration everything I have said here before I bought the farm, and what the income was and then I would place a market value on it." It does not appear that his estimates were the result of personal feelings or sentiment. Such testimony was clearly admissible. *Howell v. State Highway Department,* 167 S. C., 217, 166 S. E., 129.

But even if the testimony of Mr. Williams were incompetent, it would be harmless for the reason that the testimony of other witnesses amply support the verdict reached by the jury. *Garrick v. Railroad Company,* 53 S. C., 448, 31 S. E., 334, 69 Am. St. Rep., 874; *Lemons v. Pilot Life Insurance Company,* S. C., 13 S. E., (2d), 278, and numerous other cases. This exception is without merit.

Did the trial Judge err in charging the jury as follows: "When citizens cannot agree as to some issue then one side comes in and tells its story, and the other side tells its story, and you, gentlemen of the jury, are sworn to determine their issue for them." Appellant, by the sixth exception, contends that he did, in that "by such statement the burden of proving the value of the property in question by the greater weight or preponderance of the testimony was shifted from the respondent and placed equally upon" it, the condemnor.

We do not think, however, that the language used could portray to the minds of the jury the meaning urged by appellant. The presiding Judge throughout his charge impressed upon that body their duty to determine the market value of the land based upon the testimony produced both by respondents and appellant. Just before he made the statement excepted to, he told them to consider all the testimony and all the witnesses and that it was for them to decide which witness or witnesses they would believe. It is only reasonable to infer, therefore, when the charge is read as a whole, as it must be, that the presiding Judge, in

effect, was saying, when he used the language complained of, that when citizens cannot agree as to some issue, one side comes in and produces testimony, and the other side produces testimony, and that it is for the jury to decide which testimony and which witness or witnesses they believe and that they are sworn to determine the issue presented fairly and impartially.

And, too, at the close of his instructions, Judge Muller stated: "I believe I have covered all the requests." Counsel for appellant replied: "You might charge they might consider any recent sales of property in that vicinity," which was complied with. Counsel, however, made no request that he charge with reference to the burden of proof. And neither was the complaint as to the charge objected to made a ground of the motion for a new trial. There was no error as contended and this exception must be overruled.

In the last place, the following charge is excepted to as being coercive: "Go back in the room and try to arrive at a verdict. As you have heard me say so often, some jury has to decide this case. I wouldn't ask you to surrender your conscientious scruples. Yet, in a case of this kind, if you are in there acting conscientiously and want to do what is right then figure with each other and see if you can't come to some basis upon which all of you can agree. I am not even assuming that any of you want to do anything but what is right. I am not assuming you have got any other motive because if you have I would like to find it out because I would see that you are not drawn on another jury in Berkeley County."

After the jury had been out for some time—the record does not disclose just how long—they were called back by the Court and the foreman reported that they had not been able to agree and that he did not know whether they would be able to agree. The Court then made the supplementary charge objected to. The jury deliberated for some time—

and again the record does not disclose how long, but appellant says for only a short time—before returning their verdict.

The contention is made that the presiding Judge implied, by the words used in the supplementary charge, "that unless the jury did agree it would be apparent that the members wished to do something other than what was right and had some other motive for their conduct for which they would be deprived forever of the right to serve on juries, thereby resulting in a verdict being forced."

Appellant argues that this contention is proven by the fact that the jury reached their verdict promptly after the instruction was given. The prompt returning of a verdict, however, is not conclusive that the jury was hampered, embarrassed or coerced by the statement made, but, to the contrary, is "just as consonant with the theory that the reported inability to agree had been due to failure to give the case due and thorough deliberation as that the verdict rendered was improperly reached on account of anything said by the Judge." *Terry v. Richardson,* 123 S. C., 319, 116 S. E., 273, 276.

We do not think there can be read into the language used the meaning insisted upon. Judge Marion's statement in *Coleman v. Stevens,* 124 S. C., 8, 117 S. E., 305, 308, accurately applies to the charge in the case at bar. Here, as in that case, "there was no suggestion of a threat as to keeping the jury together for a definite or indefinite time; no suggestion of an order or command that they must agree; no emphasis upon or reference to any phase of the facts in issue; no exhortation that did not redound as fully to the benefit of the plaintiff as of the defendants; no objections as to the alleged coercive nature of the Judge's remarks was interposed at the trial," nor, in the case at bar, were such remarks made a ground of the motion for a new trial.

"It is the duty of the trial Judge to admonish juries of the desirability and importance of trying to reconcile their differences and agree upon a verdict, and, in the exercise of the discretion vested in him, to keep them together for such reasonable time as may seem necessary and proper to that end. He is in the atmosphere of the trial, and is cognizant of all the facts and circumstances developed during the trial; and therefore the length of time which should be given to the consideration of the case by the jury must be left to his sound discretion. This Court will not interefere with the exercise of that discretion, unless it is clearly made to appear that it has been abused." *Dover v. Lockhart Mills,* 86 S. C., 229, 68 S. E., 525, 528. There was no undue pressure or coercion in the instruction given. It can be construed as nothing more nor less than strong moral suasion to reconcile their differences and to do the right. Judge Muller wisely exercised the discretion vested in him. *Caldwell v. Duncan,* 87 S. C., 331, 69 S. E., 660; *Coleman v. Stevens, supra; Nelson v. Railroad Company,* 191 S. C., 345, 4 S. E. (2d), 273.

Exceptions 4 and 5 were abandoned by appellant—no question based upon them being set forth in the brief of counsel and no argument with reference to them being made—and, therefore, a consideration of them is improper and unnecessary.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE G. B. GREENE concur.