**UNITED STATES v. 340 ACRES OF LAND IN RICHMOND COUNTY, GA., et al.**

**SAME v. 6.28 ACRES OF LAND IN RICHMOND COUNTY, GA., et al.**

**Civ. A. No. 195, 172.**

District Court, S. D. Georgia, Augusta Division.

Jan. 26, 1946.

See also 54 F.Supp. 457.

S. King Funkhouser, Sp. Asst. to Atty. Gen., J. Saxton Daniel, U. S. Atty., and Charles D. Russell, Sp. Asst. to U. S. Atty., both of Savannah, Ga., and Cecil R. Hall, Sp. Atty., Department of Justice, of Augusta, Ga., for the Government.

Henry G. Howard and Lee, Congdon & Fulcher, all of Augusta, Ga., for condemnee.

WYCHE, District Judge. (Designate)

Forest Hills Hotel, Inc., the condemnee, owned and operated a winter resort hotel near the city limits of Augusta, in Richmond County, Georgia. The property consisted of a stucco hotel building of some two hundred, ninety-two rooms, servants' dormitory, stable and garage buildings, golf course and small clubhouse, together with about 650 acres of land.

The United States filed two condemnation petitions within a space of about four months under which it acquired for military uses all of the aforesaid property except approximately 300 acres of marginal lands.

The first action, Civil No. 172, filed July 12, 1942, with declaration of taking, took the standing timber on a small corner of 4.45 acres of the hotel property, designated in the petition as Tract 1-B; also fee-simple title to nine-tenths of an acre improved with garage and stable buildings, identified as Tract 2-B. These acquisitions were for the extension of an adjoining military airfield.

On October 14, 1942, the United States filed its petition in Civil Action No. 195, taking approximately 345 acres of land, including the main hotel building with certain itemized furnishings and equipment, servants' dormitory, clubhouse, golf course, shrubbery and the plot of 4.45 acres underlying the previously taken timber. The condemnor was given possession of this property on October 17, 1942, and immediately began converting it into a military hospital.

The cases were consolidated for trial, that is to say they were tried separately to the same jury and separate verdict returned on each of the three parcels. On the fifth day of the trial, after about five hours of deliberation, the jury, at its request, was brought into the court room and the foreman informed the Court that the jury was unable to agree on a verdict. The Court then delivered the supplemental instruction, about which the condemnee now complains, but which was not then objected to by either party. The Court then asked if the jury had agreed on any of the tracts, to which the foreman replied that agreement had been reached on two tracts. Both sides consenting, verdicts in Civil Action 172 were returned and published as follows: For Tract 1-B, $40; for Tract 2-B, $7,000. At this point one of the jurors stated to the Court: "We have not been able to agree upon the testimony of one witness and I would like to know if there is any way for us to get that witness' testimony, though I don't know that we will need it." After counsel for both sides stated they had no objection to the testimony being read by the reporter, the juror continued: "I don't know that we will need it, and I have reason to believe if we are sent back to our jury room it might be helpful." The jury again retired to its room and fifteen or twenty minutes later brought in a verdict of $360,000 for the property condemned by Civil Action No. 195.

The condemnee filed an amended motion for new trial on each of the three tracts. The propriety of the action of the Court in ordering the cases tried to the same jury is questioned in the first ground of each of the motions. The jury's award is, in each instance, asserted to be inadequate. These points, also the condemnee's contentions as set out in the second, seventh and tenth grounds of its amended motion involving the property taken by Civil Action No. 195 are covered by the discussion which follows. There is no merit in the other grounds of the motions.

As to first ground of the amended motion: consolidation of cases for trial is permitted as a matter of convenience and economy, whenever the trial judge considers it reasonable to do so. Here, the actions were of like nature, with identical parties, single ownership of the condemned properties and substantially the same issues involved. Witnesses for both parties testified to the value of each parcel on the date of its taking and separate awards were made by the jury. It does not appear that the condemnee was deprived of any right material to its case by reason of this procedure. 28 U.S.C.A. § 734; Mutual Life Insurance Co. v. Hillmon, 145 U.S. 285, 293, 12 S.Ct. 909, 36 L.Ed. 706; Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496, 53 S.Ct. 721, 77 L.Ed. 1331.

By the second ground of the amended motion, condemnee complains that over its objection, the Court admitted evidence of the sale of the Bon Air Hotel. It was urged by the condemnee that evidence of the sale of the Bon Air was rendered incompetent by changes in general conditions in Augusta and elsewhere, between the sale of the Bon Air and the taking of the Forest Hills Hotel; however, the Court knows of no such changes, of which judicial notice could properly be taken, and no proof of such changes was offered. The Bon Air Hotel was sold on the open market about a year before the subject property was taken. The two hotels were built at about the same time, were of similar construction, catered to the same patronage, were located in the environs of Augusta, Georgia, within two or three miles of each other. The admissibility of comparable sales in condemnation cases lies within the sound discretion of the Court. In the light of the facts recited, the proper exercise of "reasonable judgment" by the Court justified, if it did not require, admission of the proffered evidence. Nichols on Eminent Domain, 2nd Ed., sections 455, 457.

By its seventh ground, the condemnee complains that the Court erred in admitting, over objection by condemnee's counsel, testimony concerning the earnings of the hotel during the years 1932, 1933, 1934 and 1935, because this was a period of economic depression and too remote in point of time from the date of the taking in this

case. With this contention the Court would be more strongly impressed were it not for the fact that the objection came on the third day of the trial after testimony had been previously received on both direct and cross-examination, without objection from either party, relative to earnings for the even more remote period of 1927, 1928, 1929 and 1930, which witness Blanchard testified "were the best hotel years in Augusta." After lengthy discussion between the Court and counsel, in the jury's absence, the jury was recalled and instructed by the Court as follows: "Gentlemen, I have decided to admit the earnings for the whole time this hotel was in operation, from 1926 to 1942, and I will charge you that 1927 and 1928 were good years, that 1932, 1933 and possibly 1934 were bad years. * * * I think the court will take judicial notice of this." The property's earnings for 1927–1930 having been introduced, its later earnings were admitted to complete its earnings history. This history, with annual earnings weighed or discounted according to changing conditions (as to which the Court instructed the jury), would certainly have been considered in negotiation between an informed buyer and seller.

In arriving at their opinions of value, condemnee's witnesses considered earnings of the years 1939 and 1940 only, coupled with a forecast of possible earnings "during the next four or five years" following the date of the taking. Witnesses for the condemnor said they informed themselves of the hotel's earnings for each of the eleven years of its operation by the condemnee corporation, but used the record of earnings during only the six best years of that operation as a factor in arriving at their conclusions of value.

■ Both parties having relied upon actual income as one of the elements to be considered in the determination of the issue of just compensation, and having submitted evidence that the highest and best use for the property was as a hotel, the testimony of earnings was properly admitted. Nichols on Eminent Domain, 2d Ed. Vol. 2, 1171; Atlantic Coast Line R. Co. v. United States, 5 Cir., 132 F.2d 959, 963.

By the tenth ground of the amended motion, condemnee complains of the Court's supplemental instructions to the jury. That no objection was made to these instructions may signify that both sides regarded them as impartial and proper or that each side expected to benefit by them; however that may be, this ground of the motion is considered as though timely objection was made by the condemnee.

What took place in the jury room after the additional instructions were given is not known. It would be pure speculation to say that the result was to the advantage of one party or the other.

The instructions complained of were given in aid of the jury's function, not in abridgement of it. Similar instructions, delivered in similar circumstances, have been approved in many jurisdictions in both civil and criminal cases. A few of these cases, which will presently be referred to, will suffice to show the propriety of the instructions delivered in this case.

■ The case had been on trial for the greater part of five days. In the Court's judgment, five hours' deliberation[*] by the jury was not sufficient to warrant the conclusion that the jury could not agree; it was, therefore, the duty of the Court to keep the jury together until it was satisfied their inability to agree was due to conscientious and irreconcilable differences of judgment. The length of time the Court should hold the jury together is "a matter resting in the sound discretion of the court." Bernal v. United States, 5 Cir., 241 F. 339, 342; United States v. Rosso, 2 Cir., 58 F.2d 197, 201; Buntin v. City of Danville, 93 Va. 200, 24 S.E. 830.

■ If the presiding Judge thinks there may be in the jury room, unreasoning obstinacy or favor or prejudice, or any other improper influence, it becomes his duty to give the jury such instructions as will neutralize that influence and set the jury upon the proper discharge of its duty; to this end he should impress upon the jury the importance of the case, their duty to reason with each other and each to consider arguments of other jurors in the effort to reconcile their differences and reach a just verdict; leaving the jury free to reach its own conclusion. Allen v. United States, 164 U.S. 492, 501, 17 S.Ct. 154, 41 L.Ed. 528. "Nor is it error at any time to dwell upon the well-known and salutary rule in Allen v. United States, 164

---

[*] The jury had in that time reached its verdict of awards in Civil Action 172 for the taking of Tracts 1–B and 2–B.

U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, and upon the duty of jurymen to listen to each other's arguments and be persuaded to a decision by reason, rather than to prevent any decision by obstinate adherence to earlier impressions." Dwyer v. United States, 2 Cir., 17 F.2d 696, 698.

In circumstances strongly resembling those of the case at bar, it was held that a similar supplemental charge "was not an improper expression of opinion by the court to the jury that the jury should be able from the evidence in the case to return a verdict, and it did not amount to coercion." Davis v. Frederick, 155 Ga. 809, 815, 118 S.E. 206, 207.

The instructions here complained of carried no suggestion of favor to either party and contain this explicit direction: "I don't mean by that, (that) a juror should give up his convictions, until his fellow jurors have convinced him that he is wrong."

As in the case of Culp v. United States, 8 Cir., 1942, 131 F.2d 93, 101, the supplemental instructions given by the court were entirely impartial. They contained no intimation as to what verdict should be rendered. No juror was asked to surrender his judgment or to violate his oath.

The prompt return of a verdict after the supplemental instructions does not justify the conclusion that the verdict was coerced, but is "just as consistent with the theory that the reported inability to agree had been due to failure to give the case due and thorough deliberation as that the verdict rendered was improperly reached on account of anything said by the judge." S. C. Pub. Service Auth. v. Spearwant Liquidating Co., 196 S.C. 481, 13 S.E.2d 605, 608.

In the case of United States v. Olweiss, 2 Cir., 138 F.2d 798, 800, where the trial court, in response to a report from the foreman after two hours' deliberation that the jury was hopelessly divided, stated that only a simple question was involved and that the jury should not have difficulty in coming to an agreement, and that they could have all of the following day and the next if desired, and a guilty verdict was returned thirty minutes later, it was decided that the court's statement could not be regarded as a threat to keep jury together for two days or as a direction to convict, and that the implication that he

meant to keep them together for so long was much too remote to be taken seriously as a threat.

In Civil Action 172 the awards made by the jury are in the sums to which the government's witnesses had testified. In Civil Action 195 testimony by the government witnesses ranged from $315,000 to $350,000; the range of the condemnee's testimony was from $500,000 to $800,000. The verdict in this case was for $360,000. The awards are within the range of the evidence and no reason appears for disturbing them.

The motions, and each of them, on each and all of the grounds thereof, are denied.

Counsel may submit formal order accordingly.