**COPLEY v. STONE et al.**
**Civ. A. No. 776.**

District Court, W. D. South Carolina,
Spartanburg Division.

Dec. 30, 1947.

---

E. P. Riley, of Greenville, S. C., and H. H. Edens, of Columbia, S. C., for plaintiff.

Perrin, Tinsley & Perrin, of Spartanburg, S. C., for defendants Alvin C. Stone and J. H. Williams.

Young & Long, of Union, S. C., for Mrs. Smith Lancaster and Smith Lancaster.

WYCHE, District Judge.

In this action plaintiff seeks damages for personal injuries which he alleges were caused by the collision of a motorcycle driven by one Leo L. Powers, upon which he was riding as a passenger, when the motorcycle collided with the rear of a taxicab driven by the defendant Alvin C. Stone; that the collision of the motorcycle with the taxicab was caused by a collision of the taxicab with an automobile driven by the defendant Smith Lancaster; that the taxicab was driven by the defendant Alvin C. Stone as agent of the owner, the defendant J. H. Williams; that the automobile was driven by the defendant Smith Lancaster as agent of the owner, the defendant Mrs. Smith Lancaster; that his injuries were caused by the separate, independent acts of negligence of the defendants Stone and Williams on the one hand, and of the defendants Mrs. Smith Lancaster and Smith Lancaster on the other hand.

The defendants Stone and Williams deny the material allegations of the complaint, and allege that the injuries to the plaintiff were the direct and proximate result of the negligence of the defendants Mrs. Smith Lancaster and Smith Lancaster "to which these defendants contributed in no particular whatsoever"; that the injuries to the plaintiff were the direct and proximate result of the negligence on the part of the operator of the motorcycle on which plaintiff was riding, concurring and combining with the alleged negligence of these defendants (which negligence is specifically denied) without which said negligence on the part of the operator of the motorcycle said injuries to the plaintiff would not have occurred; that the plaintiff and the operator of the motorcycle on which plaintiff was riding were engaged in a joint enterprise and the acts of negligence committed by the operator of the motorcycle were attributable to the plaintiff, and that plaintiff was thereby guilty of contributory negligence. However, the defenses of joint enterprise and contributory negligence were abandoned during the trial.

The defendants Mrs. Smith Lancaster and Smith Lancaster deny the material allegations of the complaint and deny that Smith Lancaster was the agent of the defendant Mrs. Smith Lancaster.

At the conclusion of the testimony for the plaintiff, the defendants moved for a dismissal on the ground that the plaintiff failed to prove any actionable negligence on their part, and made a motion for directed verdict at the conclusion of all the testimony upon the same ground. Under Rule 50(b), Rules of Civil Procedure, 28 U.S. C.A. following section 723c, I reserved my decision on both motions, and submitted the cause to the jury.

The jury returned a verdict for the plaintiff in the sum of $8,000 actual damages against the defendant Stone, Williams and Smith Lancaster.

The matter is now before me upon the motion of the defendants Stone and Williams for judgment non obstante veredicto and failing in that for a new trial.

The accident happened near the center of Union Street slightly beyond the intersection of Advent and Union Streets in the City of Spartanburg, South Carolina. The jury, upon consent of the parties, viewed the scene of the accident, and by suggestion of counsel, I have inspected it for information in the consideration of this motion.

The scene of the accident, together with the photograph introduced at the trial (Exhibit 1), and the testimony in this case, disclose that Union Street, from curb to curb, is approximately 35 feet wide, and runs in a northerly direction from the city limits of the City of Spartanburg to a traffic light where it crosses Kennedy Street; that Advent Street runs across Kennedy Street in a southwesterly direction into Union Street, forming an angle of about thirty-six degrees between Union and Advent Streets; Advent Street is, from curb to curb, about 36 feet wide; however, it is approximately 100 feet wide where it enters Union Street; that Kennedy Street runs in a westerly direction across Advent Street and crosses Union Street at a traffic light. A Shell filling station is located on the triangular island formed by Advent, Kennedy and Union Streets. Upon approaching the Advent Street intersection from the south on Union Street the entire section of Advent Street between Kennedy and Union Streets is visible for a distance of approximately 150 feet. There is a "Stop" sign on the right-hand side of Advent Street where it enters Union Street.

The following traffic ordinances and State statutes were introduced in evidence: "Those streets and parts of streets described in Schedule IV attached hereto and made a part hereof are hereby declared to be through streets for the purpose of.this section. (Union Street is designated as a through street.)

"When stop signs are erected or marked on streets intersecting a through street at the entrances thereto or at the entrance to any intersection, every driver of a vehicle shall stop at every such sign or at a clearly marked stop line before entering the intersection except when directed to proceed by a police officer or traffic control signal.

"It is unlawful and punishable as provided in subdivision (b) of this section for any person who is an habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs to drive any vehicle within this city.

"Any person who drives any vehicle in such a manner as to indicate either a wilful or a wanton disregard for the safety of persons or property is guilty of reckless driving.

"No person shall drive a vehicle on a street at a speed greater than is reasonable and prudent under the conditions then existing.

"The fact that the speed of a vehicle is lower than the foregoing prima facie limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when travelling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the street in compliance with legal requirements and the duty of all persons to use due care.

"When two vehicles enter an intersection from different streets at the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.

"The driver of a vehicle shall stop as required by this ordinance at the entrance to a through street and shall yield the right of way to other vehicles which have entered the intersection from said through street, or which are approaching so closely on said through highway as to constitute an immediate hazard, but said driver, having so yielded, may proceed, and the drivers of

all other vehicles approaching the intersection on said through street shall yield the right of way to the vehicle so proceeding into or across the through street."

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions then existing."

"Where no special hazard exists the following speeds for passenger vehicles shall be lawful and any speed to excess of said limits shall be unlawful:

"1. Twenty-five miles per hour in any business district;

"2. Thirty-five miles per hour in any residence district;

"3. Fifty-five miles per hour under other conditions."

"The fact that the speed of a vehicle is lower than the foregoing limits shall not relieve the driver from the duty to decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions, and speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care."

"Whenever the department shall determine upon the basis of an engineering and traffic investigation that any speed hereinbefore set forth is greater than is reasonable or safe under the conditions found to exist at any intersection or other place or upon any part of a highway, the department shall determine and declare a reasonable and safe speed limit thereat which shall be effective when appropriate signs giving notice thereof are erected at such intersection or other place or part of the highway."

"The foregoing provisions of this subsection shall not be construed to relieve the plaintiff in any civil action from the burden of proving negligence upon the part of the defendant as the proximate cause of an accident."

"No person shall turn a vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety and then only after giving a clearly audible signal by sounding the horn if any pedestrian may be affected by such movement or after giving an appropriate signal in the manner hereinafter provided in the event any other vehicle may be affected by such movement."

"No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal."

"The signals herein required shall be given either by means of the hand and arm or by a signal lamp or signal device of a type approved by the department, but when a vehicle is so constructed or loaded that a hand and arm signal would not be visible both to the front and rear of such vehicle then said signals must be given by such a lamp or device."

"Methods of giving signals.—* * * 3. Stop or decrease of speed.—Hand and arm extended downward." Code S.C.1942 § 1616(2) (a, b, d–f), (16) (a, c), (17, 18).

The witness Powers, who was driving the motorcycle at the time of the accident, testified that for a distance of a quarter of a mile from the scene of the accident he was following the taxicab driven by the defendant Stone, keeping at a distance of about 25 feet to the rear of the taxicab; that he was driving on the right-hand side of the road, slightly to the left of the center of the lane, thereby obstructing his view of traffic coming into Union Street from intersecting streets to his right, and particularly from Advent Street; that the taxicab came to an abrupt stop without any warning; that he heard the screeching of brakes and sounds like a crash simultaneously. He saw no signal, heard no blowing of a horn. He applied his brakes and turned to the right in an attempt to avoid hitting the taxicab, but the motorcycle skidded into the back right-hand fender and bumper of the taxicab, crushing plaintiff's leg between the bumper of the taxicab and the motor of the motorcycle; that

the taxicab turned neither to the right nor to the left before the crash; that the taxicab and the motorcycle were each traveling about 20 miles an hour at the time of the collision; that the accident occurred on Union Street about 150 feet from the stop sign on Advent Street.

The plaintiff Copley testified that there was no slackening of the speed of the taxicab before the application of the brakes and the sudden stop; that the accident took place about five feet below a telephone pole which was located on the east side of Union Street.

The defendant Stone, the driver of the taxicab, testified that he did not know the motorcycle was traveling behind him and he did not see the motorcycle before the accident.

The taxicab came to a sudden stop because of a collision of the taxicab with an automobile driven by defendant Smith Lancaster from Advent Street into Union Street.

Smith Lancaster stated that before he entered Union Street he made an observation of the view to the left and right of Union Street and saw nothing and therefore proceeded into Union Street without stopping at the stop sign; that when his car reached the white line in the middle of Union Street (photograph Exhibit 1) the taxicab struck his left rear fender and stopped dead; that when the taxi ran into his automobile he had already turned his car down Union Street; that he never saw the taxicab until it struck his car; that he was driving eight or ten miles per hour when he entered Union Street.

On cross-examination the defendant Stone testified,

"Q. At the point where Advent intersects Union, how far was it from such intersection, as shown on this picture, before you saw the Lancaster car? A. I seen him way before I got to the intersection.

"Q. You also saw that he wasn't stopping? A. He went to slowing down like he was going to stop. I couldn't read his mind. * * *

"Q. You hit him, his left rear bumper, in your right-hand driveway of Union Street. A. (No answer)

"Court: Answer the question. A. Yes.

"Q. Is that correct? A. Yes. My car was sitting right here against the curb right here.

"Q. You hit him right here in the right-hand lane of Union Street, opposite the end of this white line? A. That's right.

"Q. He had traveled approximately 90 or 100 feet from this intersection out into Union Street, before you hit him? A. He might have; I don't know how far it is across here.

"Q. He had to do it, didn't he? A. He had to where I hit him. * * *

"Q. You didn't slow down for this particular intersection? A. No, sir."

The defendant Stone also testified that when he saw the Lancaster car approaching across the intersection he swung to the left, and then seeing he could not go in front of him, he swung to the right, and it was then he applied his brakes; he admitted that had he applied his brakes when the Lancaster car was first observed the collision would have been avoided.

The testimony of the witness Walter E. Jett, an officer of the Spartanburg Police Department, who viewed the scene of the accident and took the photograph which was introduced in evidence, indicates that the driver of the taxicab had a clear and unobstructed view for at least 150 feet on Union Street of cars proceeding along Advent Street into the intersection of Union Street and Advent Street.

There was testimony that the defendant Smith Lancaster was under the influence of alcoholic liquors at the time of the accident.

 At the outset it should be stated that the defendants are sued jointly as joint tort-feasors. In the case of Pendleton v. Columbia Ry., Gas & Electric Co., 133 S.C. 326, at page 331, 131 S.E. 265 at page 267, the Supreme Court of South Carolina said: "That a single injury, which is the proximate result of the separate and independent acts of negligence of two or more parties, subjects the tort-feasors, even in the absence of community of design or concert of action, to a liability which is both joint and several, is a proposition recognized and approved in this state and supported by the great weight of authority elsewhere."

As I pointed out in the case of Malone v. Suburban Transit Co., D.C., 64 F.Supp. 859, 863, "The South Carolina Supreme Court has declared that where a motion is made for a directed verdict the testimony and all reasonable inferences adducible therefrom must be considered in the light most favorable to the party against whom the motion is made, and it is not the province of the court to weigh testimony but simply to determine if there is any relative, competent testimony adduced from which a reasonable inference may be drawn tending to establish the material elements of the plaintiff's cause of action. * * * If more than one reasonable inference can be drawn from the testimony, it is the duty of the trial judge to submit the cause to the jury."

Viewing the testimony in this case in such light, it is my opinion that there was substantial evidence introduced at the trial from which the jury could have reasonably concluded that the defendants Stone and Williams on the one hand, and the defendant, Smith Lancaster, on the other hand, were guilty of separate, independent acts of negligence, as alleged in the complaint, and that such separate, independent acts of negligence on the part of each combined and concurred to produce plaintiff's injuries as a proximate cause thereof.

From the testimony it could be reasonably inferred that the driver of the taxicab was quite a distance from the intersection when Lancaster started into the intersection and definitely committed himself to proceed across the intersection, and that the driver of the taxicab should have brought the taxicab to a gradual stop, or kept it under control, or steered it to the right so as not to make a sudden stop or collision, when he observed, or should have observed, the Lancaster car proceeding into the intersection.

The testimony discloses that the front of the taxicab hit the rear fender of the Lancaster car. It may be reasonably inferred from this fact that the Lancaster car had proceeded into the intersection first. This inference may also be drawn from the testimony of Copley wherein he stated that the accident took place about five feet below a telephone pole, which was located on the east side of Union Street.

From all the testimony, an inspection of the scene of the accident, and the photograph, it may be reasonably inferred that the driver of the taxicab was negligent in failing to keep the taxicab under proper control in approaching the intersection of highways, in failing to bring the taxicab to a gradual stop; in failing to sound his horn or give a signal of his intention to stop; in failing to keep a proper lookout to see motor vehicles coming from Advent Street into Union Street; in failing to turn to the right so as to avoid collision with the Lancaster car; and in failing to observe due care under all the circumstances.

From the testimony it may be reasonably inferred that the defendant Smith Lancaster was negligent in failing to stop at the stop sign; in failing to keep a proper lookout to observe vehicles traveling on Union Street; in driving an automobile under the influence of alcoholic liquors; and in failing to observe due care under all the circumstances.

It may be reasonably inferred from all the testimony in this case that if either the driver of the taxicab or the driver of the Lancaster car had observed due care the accident would not have happened.

The moving defendants rely strongly upon their contention that the sole cause of the accident was the failure of the defendant Lancaster to stop his car at the stop sign.

In the case of North State Lumber Co. v. Charleston Consolidated Ry. & Lighting Co., 115 S.C. 267, 105 S.E. 406, 408, the Supreme Court of South Carolina, aptly said: "The erroneous notion seems to be prevalent that, if one has the right of way, as it is called, he may proceed without regard to circumstances, conditions, or consequences. Even when one has the right of way, he is still bound to exercise due care for his own safety, and to prevent injury to others."

State statutes and city ordinances regarding stop signs at intersections are intended to facilitate travel upon arterial highways. A person driving upon an arterial road cannot disregard the duty of observing due

care when using or approaching the intersection, otherwise it would justify absolute reliance on the assumption that another motorist approaching it will observe the stop sign and "would encourage a stubborn adherence to a supposed right of way under all conditions—a rule which would be more likely to produce disaster than promote safety." He does not possess an unqualified privilege in the use of the through highway. "The duty still rests on him to use due care in approaching an intersection, notwithstanding he may know that it is protected by a stop sign on the less favored highway; and without the exercise of such care his right of way will not avail him. His right to rely on the assumption that a driver approaching the intersection on the servient road will observe the stop sign is forfeited when he approaches the intersection and attempts to traverse it at an unlawful or excessive speed. And even when he is within the law, it may be necessary for him to surrender his right of way, in the exercise of due care, to avoid the consequences of another's negligence." His right "to assume that another approaching on the servient road will observe a stop sign, or laws respecting the right of way, is conditioned on his own behavior, and the assumption can be made only when it will not be inconsistent with the paramount duty to exercise due care, incumbent on the person who would assert the right. Simply stated, the right to make the assumption is available only to one who himself is free from negligence." Groome v. Davis, 215 N.C. 510, 2 S.E.2d 771, 774.

In this case it was the duty of the driver of the taxicab to use ordinary care in approaching the intersection, which means that degree of care which an ordinarily prudent man would exercise to avoid such dangers as reasonably might be anticipated. The intersection in this case was unobstructed. It was, therefore, the duty of the taxicab driver to use his eyes and his judgment with regard to cars approaching on Advent Street. If he discovered, or by the exercise of reasonable care could have discovered, that Lancaster apparently did not intend to observe the stop sign, it was the taxicab driver's duty to use the means in his power to avoid the collision. It would not be a logical defense if, when the discovery was made, or should have been made, he was powerless to act because of previous negligence on his part. The presence of a stop sign and the fact that it was overrun by Lancaster would not necessarily and as a matter of law absolve the taxicab driver from negligence, "or insulate any negligence of which he might have been guilty from its natural and probable consequences as a proximate or contributing cause." The jury could have reasonably inferred that the taxicab driver and Lancaster were concurrently negligent. Groome v. Davis, supra; Jones v. Cook, 96 W.Va. 60, 123 S.E. 407.

These defendants move for a new trial upon the ground that supplemental instructions to the jury coerced the verdict.

What took place in the jury room after additional instructions were given is not known. It would be pure speculation to say that the result was to the advantage of one party or the other. The instructions complained of were given in aid of the jury's function, not in abridgement of it. Similar instructions, delivered in similar circumstances, have been approved in many jurisdictions in both civil and criminal cases. The instructions I gave in this case were modeled after instructions approved by the court in the cases of Johnson v. United States, 4 Cir., 5 F.2d 471; Lias v. United States, 4 Cir., 51 F.2d 215; Hoagland v. Chestnut Farms Dairy, App.D.C., 72 F.2d 729; Lehigh Valley R. Co. v. Allied Machinery Co., 2 Cir., 271 F. 900.

As was stated in the case of United States v. 340 Acres of Land, etc., D.C., S.D.Ga., 64 F.Supp. 117, 120, "If the presiding Judge thinks there may be in the jury room, unreasoning obstinacy or favor or prejudice, or any other improper influence, it becomes his duty to give the jury such instructions as will neutralize that influence and set the jury upon the proper discharge of its duty; to this end he should impress upon the jury the importance of the case, their duty to reason with each other and each to consider arguments of other jurors in the effort to reconcile their differences and reach a just verdict; leaving the jury free to reach its own conclusion."

210

In my opinion there is no merit in this ground or in the other grounds urged by these defendants for a new trial.

The motions, and each of them, on each and all of the grounds thereof, are denied.

Counsel may submit formal order accordingly.